UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

SHYH CHING TIEN,

                Petitioner,

v.

KEVIN RAYCRAFT et al.,

                Respondents.
_____/

Case No. 1:26-cv-874

HON. ROBERT J. JONKER

## **OPINION**

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan, initiated this action by filing a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1).  For the following reasons, the Court will deny Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2241.

## **BACKGROUND**

Petitioner is not a citizen of any country.  (Pet., ECF No. 1, PageID.4; *see* Peng Decl. ¶ 4, ECF No. 6-1, PageID.63). He was born in South Korea on May 20, 1975, but not granted citizenship because his parents were citizens and nationals of Taiwan. (*Id.*). According to Petitioner, although parents were citizens of Taiwan and his grandparents were citizens of China, he is not a citizen of either of those countries. (ECF No. 1, PageID.4). In 1984, Petitioner entered the United States as a legal permanent resident. (*Id.* at PageID.5).

In 1992, Petitioner was convicted of attempted kidnapping in the first degree in New York. (Pet., ECF No. 1, PageID.5; Peng Decl. ¶ 6, ECF No. 6-1, PageID.63). The state court sentenced

him to seven to twenty-one years of imprisonment for that offense. (Peng Decl. ¶ 6, ECF No. 6-1, PageID.63). A few years later, in 1994, the Immigration and Naturalization Service (INS) issued Petitioner a Form I-221, charging him with violating 241(a)(2)(A)(iii) of the Immigration and Nationality Act (INA) because he was convicted of an aggravated felony for which a term of imprisonment imposed was five years or more. (*Id.*).

In March 1997, an immigration judge ordered Petitioner removed to the Taiwan or, in the alternative, to South Korea. (*Id.* at PageID.64; ECF No. 1, PageID.5). Petitioner appealed that decision, and in September 1997, the BIA vacated the immigration judge's original order and instead ordered Petitioner removed to South Korea, or in the alternative Taiwan. (ECF No. 6-1, PageID.64). Petitioner moved to reconsider that decision, but the BIA denied his motion in 2001. (*Id.*).

From 1997 to 2002, INS could not remove Petitioner because he was still serving his criminal sentence in New York. (ECF No. 1, PageID.5). On September 3, 2002, the New York Department of Corrections released Petitioner to the custody of INS. (ECF No. 6-1, PageID.64). Shortly thereafter, INS attempted to remove Petitioner to both Korea and Taiwan, as required by the removal order.[1] (*Id.*). But both attempts failed. (*Id.*). On March 3, 2003, INS determined that Petitioner should be released from custody, and a few days later, released him under an order of supervision. (*Id.* at PageID.65). From the time of his release until September 15, 2025, Petitioner attended regular check-ins with INS and then ICE. (*Id.*). He was also instructed to apply for travel documents from the South Korea and the Taiwan. (*Id.*). Neither country issued any documents during that period. (*Id.*).

---

[1] Nothing in the record indicates that INS attempted to remove Petitioner to a third country, like China, in 2002 or 2003.

On September 15, 2025, ICE detained Petitioner at one of his scheduled check-ins. (ECF No. 1, PageID.6). Since Petitioner's detention, ICE has tried to remove him. Initially, ICE sought travel documents from both Taiwan and South Korea, but as before, both countries denied that request in October 2025. (*Id*.). Shortly thereafter, ICE prepared a travel document request for a third country, China, and then later informed Petitioner that it was seeking removal options from third countries. (*Id.* at PageID.66). At this time, the travel documents request from China remains pending. In early March 2026, ICE reviewed Petitioner's custody circumstances and determined that because ICE "continues to work" with China to procure travel documents, there is reason to believe that there is a significant likelihood of removal in the foreseeable future. (ECF No. 6-4, PageID.79; *Id.* at PageID.66-67). Petitioner has thus remained in ICE custody since September 15, 2025. Petitioner filed this habeas petition on March 17, 2026, shortly after ICE's decision to continue detention.

In Petitioner's § 2241 petition, Petitioner challenges the lawfulness of his current detention and asks the Court to, among other things, assume jurisdiction over this matter and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner.  (ECF No. 1).  In an order entered on March 27, 2026, the Court directed Respondents to show cause why the writ of habeas corpus and other relief requested by Petitioner should not be granted.  (Order, ECF No. 3).  Respondents filed their response (ECF No. 6) on April 10, 2026, and Petitioner filed his reply (ECF No. 7) on April 14, 2026.

## HABEAS CORPUS LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of

3

the United States."  This includes challenges by non-citizens in immigration-related matters.  *See*

*Zadvydas v. Davis*, 533 U.S. 678, 687 (2001);  *see also A. A. R. P. v. Trump*, 605 U.S. 91,

94 (2025).

### DISCUSSION

The parties agree that Petitioner is subject to a final order of removal.  As a result,

Petitioner's present detention is governed by 8 U.S.C. § 1231.  However, Petitioner contends that

his detention is unlawful and violates the Due Process Clause of the Fifth Amendment.  In

response, Respondents argue that Petitioner's continued detention for purposes of removal is

authorized by *Zadvydas*.

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall

remove the alien from the United States within a period of 90 days (in this section referred to as

the 'removal period')."  8 U.S.C. § 1231(a)(1)(A).  "During the removal period, the Attorney

General shall detain the alien."  *Id.* § 1231(a)(2)(A).  8 U.S.C. § 1231(a)(6) further provides:

> An alien ordered removed who is inadmissible under section 1182 of this title,
> removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or
> who has been determined by the Attorney General to be a risk to the community or
> unlikely to comply with the order of removal, may be detained beyond the removal
> period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

In *Zadvydas*, the Supreme Court considered whether 8 U.S.C. § 1231(a)(6) authorizes

indefinite detention when no other country is willing to take a person who has been ordered

removed.  533 U.S. at 682.  In answering that question, the Court noted that the purpose of the

statute was to assure the "alien's presence at the moment of removal."  *Id.* at 699.  Therefore, the

Court concluded that for post-removal-order detention to be authorized by the statute, the removal

itself must be reasonably foreseeable.  *Id.*  The Court indicated that this inquiry would vary from

case to case and that there was no specific point in time at which the detention became

constitutionally impermissible.  *Id.*  Still, to assist the lower courts in making the difficult judgment calls about when the detention was no longer authorized by the statute, the Court designated six months as a "presumptively reasonable period of detention."  *Id.* at 701.  Even after six months has passed, though, the Court made clear that the alien may continue to be held unless the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."  *Id.*

Under this framework, it is the Petitioner's burden to come forward with evidence showing that removal is not significantly likely to occur sometime soon.  *Id.*  Only after the Petitioner has come forward with such evidence does the burden flip to the respondents, who must then show evidence that the removal is, in fact, reasonably foreseeable.  *See Abdalla v. Johnson*, No. 16-14422, 2017 WL 345731, at *4 (E.D. Mich. Jan. 24, 2017) (rejecting Petitioner's claim that detention of more than a year violated *Zadvydas* when the petitioner "provide[d] no evidence" that removal was unlikely to occur in the near future).

Here, although Petitioner has remained in detention for roughly seven months, which is just outside *Zadvydas*'s presumptive reasonable period of detention, removal is still reasonably foreseeable at this point. Petitioner has pointed to the fact that he is not a citizen of any country and that both he and respondents have repeatedly tried—and failed—to obtain travel documents from Taiwan and South Korea and removal to those countries. (ECF No. 6-1, PageID.64-65). True, the government has had some difficulty effectuating removal up until this point. But even assuming for the sake of argument that such evidence satisfies Petitioner's burden under *Zadvydas*, Respondents' evidence shows that the U.S. government is still actively working towards effectuating petitioner's removal. Respondents are now seeking removal to a third country, China,

instead of Taiwan and South Korea.[2] Respondents' travel documents request from China is currently pending and the government's discussions with China on this matter, even if delayed at times, appear to be ongoing. (ECF No. 6-4, PageID.79; ECF No. 6-1, at PageID.66-67); *see Khaleque v. Dep't of Homeland Sec.*, No. 08-CV-477S, 2009 WL 81318, at *4 (W.D.N.Y. Jan. 9, 2009) (finding a "significant likelihood of removal in the reasonably foreseeable future" where "the request for travel documents is pending, and, to date, the Consulate has given no indication that travel documents will not be issued"). Thus, at this point in time, Petitioner is not in the state of "indefinite, perhaps permanent, detention" that the Court in *Zadvydas* said would violate the constitution.[3] *Zadvydas*, 533 U.S. at 699; *see also Martinez v. Larose*, 968 F.3d 555, 565 (6th Cir. 2020) (holding that a detention of over two years was constitutionally permissible because the removal was likely to occur once Petitioner's appeals were concluded).

The Court recognizes that continued detention may, over time, come to resemble the kind of indefinite confinement that *Zadvydas* may not permit. "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely [has] to shrink."

---

[2] Petitioner asserts in his petition that DHS previously attempted to remove Petitioner to China and applied for travel documents from China. (ECF No. 1, PageID.5). But he does not provide any evidence to support that assertion. In fact, the Respondents' evidence indicates that the U.S. government only attempted to remove to Taiwan and South Korea in 2002 to 2003, as required by the original removal order. (ECF No. 6-1, PageID.64-65). The evidence further shows that this is the Respondents first request for travel documents from China. (*See id.*). There is nothing in the record to indicate that DHS ever tried to remove Petitioner to, or secure travel documents from, China until Petitioner's most recent detention.

[3] Petitioner's background also informs the Court's determination. As both parties acknowledge, Petitioner has a felony conviction in the first degree for attempted kidnapping. Although this conviction may be over 30 years old, a foreign country—in this case, China—might understandably review Petitioner's travel document application and removal request more carefully, which, in turn, could result in processing delays. If that is the case, any delays in this case would have arisen not through government inaction but rather the Petitioner's own conduct. *Cf. German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 211-12 (3d Cir. 2020) (noting that the actions taken by the either the petitioner or the government, which result in delays, informs whether detention length in the pre-removal context). In this particular case, where the government has shown that it actively seeks removal and Petitioner's own actions may have caused delays in that process, Respondents deserve additional grace for any removal delays. *Id.*

*Zadvydas*, 533 U.S. at 701.   Courts applying this principle recognize that even where the government continues to pursue removal in good faith, the passage of time can eventually erode the reasonableness of continued detention.   *See Martinez*, 968 F.3d at 565 (explaining that prolonged detention may become unreasonable if the petitioner later demonstrates that removal is no longer likely).

Here, however, the Court is not yet faced with that situation. An immigration official has testified that the government remains in discussions with a third country, China, to secure travel documents for Petitioner and effectuate his removal. It may be that China will eventually deny the Respondents' travel document and removal request. And, if that happens, removal might become more unlikely. But that is not yet the case. At this point, it seems to the Court that Petitioner's removal remains significantly likely in the reasonably foreseeable future.   Accordingly, the petition will be **denied without prejudice**. Should the government's efforts to secure removal ultimately stall or fail to bear fruit, Petitioner remains free to file a new petition asserting that continued detention is no longer reasonable.

### CONCLUSION

For the reasons discussed above, the Court will enter a judgment dismissing Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.

Dated:   April 24, 2026                          /s/ Robert J. Jonker
                                                 Robert J. Jonker
                                                 United States District Judge

7